NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-783                                            Appeals Court

COMMONWEALTH  vs.  JAMIE BAKER.


No. 16-P-783.

Plymouth.      March 8, 2017. - May 4, 2017.

Present:  Grainger, Blake, & Neyman, JJ.


Constitutional Law, Search and seizure, Roadblock by police.
     Search and Seizure, Motor vehicle, Roadblock by police.
     Motor Vehicle, Operating under the influence.  Practice,
     Criminal, Motion to suppress.


     Complaint received and sworn to in the Brockton Division of
the District Court Department on May 27, 2014.

     A pretrial motion to suppress evidence was heard by
Julieann Hernon, J.

     An application for leave to prosecute an interlocutory
appeal was allowed by Barbara A. Lenk, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.


     Keith A. Garland, Assistant District Attorney, for the
Commonwealth.
     Bethany J. Rogers for the defendant.


     GRAINGER, J.  Defendant Jamie Baker, charged in the

District Court with operating while under the influence of

alcohol, see G. L. c. 90, § 24(1)(a)(1), and negligent operation, see G. L. c. 90, § 24(2)(a), moved to suppress evidence of his intoxication, arguing that the evidence was secured from a sobriety checkpoint not conducted in strict and absolute compliance with the written operational plan (the plan). After his motion was allowed, the Commonwealth was given leave by a single justice of the Supreme Judicial Court to pursue this interlocutory appeal. The Commonwealth argues that the motion judge erred in suppressing the evidence and we agree.

We recite the pertinent facts found by the motion judge. Police Captain Thomas Majenski was directed by police Major Anthony Thomas to conduct a saturation patrol and sobriety checkpoint with a detail of State troopers and police officers from the town of Abington (the town). The plan stated that the roadblock would begin at 11:30 P.M. Major Thomas directed that all officers report for the training and briefing session prior to the checkpoint. Captain Majenski was directed to command the detail for the roadblock. Three officers[1] arrived after the roadblock commenced. Upon their arrival, Captain Majenski briefed them.

During the roadblock, the defendant was pulled over and greeted by Sergeant Kevin Cutter of the town police. Sergeant Cutter observed signs of intoxication in the defendant and

---

[1] Troopers Kyle Duarte, Carly Timmons, and Andrew Hamilton.

directed him to the "pit" area. The defendant refused "to drive the vehicle." He then was escorted from the vehicle to the pit area where Officer Justin Simmons of the town police asked him to perform sobriety tests. After the tests, the defendant was placed under arrest.

Upon completion of the roadblock, officer activity reports were not submitted by any of the town police officers[2] or by four of the State troopers. One officer present at the roadblock failed to sign the duty roster affirming that he had reviewed the plan and the State police General Order TRF-15, which governed sobriety checkpoints. The motion judge concluded that the Commonwealth failed to demonstrate that the roadblock was conducted in strict compliance with the plan.

Discussion. We determine independently whether the judge correctly applied constitutional principles to the facts as found. Commonwealth v. Ocasio, 434 Mass. 1, 4 (2001). "[F]or sobriety checkpoints to be reasonable under the Fourth Amendment [to the United States Constitution] and art. 14 [of the Massachusetts Declaration of Rights], 'the selection of motor vehicles to be stopped must not be arbitrary, safety must be assured, motorists' inconvenience must be minimized, and assurance must be given that the procedure is being conducted

---

[2] As previously stated, the officer who greeted the defendant and the officer who conducted the sobriety tests were members of the town police.

pursuant to a plan devised by law enforcement supervisory personnel.' . . . Police officers may not . . . have discretion to target which vehicles to stop." Commonwealth v. Murphy, 454 Mass. 318, 323 (2009). In sum, "[t]he constitutional jurisprudence regarding roadblocks in general, and sobriety checkpoints in particular, has focused on the reasonableness of the initial stop of a vehicle, which constitutes a seizure without individualized suspicion." Id. at 324-325.

The judge concluded that the roadblock deviated from the plan in four respects: (1) a number of officers arrived after the reporting time detailed in the plan, (2) while Captain Majenski was briefing the late officers, he was not performing supervisory duties as instructed, (3) one trooper, who was not the officer involved with stopping the defendant's vehicle, did not sign the duty roster affirming he had reviewed the plan and other relevant documents, and (4) after the roadblock was completed, several officers failed to submit a report as required by the plan.

We conclude, however, that none of these deviations introduced constitutionally prohibited "arbitrariness and discretion" into the actions of the screening officer (Sergeant Cutter). Commonwealth v. Anderson, 406 Mass. 343, 349 (1989). Indeed, the defendant declined to challenge the particular basis for which he was stopped and asked to perform sobriety tests.

Discrepancies with the plan do not necessarily convert a vehicle checkpoint into a constitutionally unreasonable seizure. See Commonwealth v. Aivano, 81 Mass. App. Ct. 247, 250-251 (2012) (discrepancy between actual location of roadblock and description in press release did not make roadblock constitutionally unreasonable seizure). The roadblock started on time with the minimally required number of officers, per Major Thomas's directive. The officers who interacted with the defendant had arrived on time. Furthermore, § 5.1 of the State police Division Commander's Order 13-DFS-008, which governed highway safety programs, allows the possibility of officers arriving after the roadblock has been established.[3] Section 5.1 also authorized Captain Majenski, as the supervisor, to brief the officers after their arrival. We therefore conclude that the late arrivals and Captain Majenski's briefing did not render the roadblock unconstitutional.

Although one State trooper failed to sign the duty roster, there was no indication that this trooper had not been briefed appropriately or was unaware of his responsibilities under the plan as he turned in the required officer activity report. The failure of four State troopers and all of the town police

---

[3] This order states that for sobriety checkpoints, "a secondary briefing of officers not in attendance at the pre-saturation phase roll-call may be conducted prior to his/her participation in the sobriety checkpoint."

officers to fill out officer activity reports at the completion of the roadblock also did not introduce the use of discretion during the actual roadblock.

In sum, none of the deviations cited by the defendant "introduce[d] an opportunity for discretionary departure by law enforcement in the field from the dictates of the plan."  Id. at 250.  Additionally pertinent here is the fact that the discrepancies did not have any effect on the defendant, and did not violate any of his personal rights.  See Commonwealth v. Ocasio, 434 Mass. at 4.  Contrast Commonwealth v. Anderson, supra at 349-351 (defendant stopped fifteen minutes after scheduled end of roadblock suffered actual harm as result of deviation from plan).  The order allowing the defendant's motion to suppress is reversed and a new order shall enter denying the motion.

So ordered.